UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RAMIRO VELASQUEZ-CONTRERAS,

                    Petitioner,

     v.

MARKWAYNE MULLIN, *et al.*,

                    Respondents.

CASE NO. 2:26-cv-01250-GJL

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Ramiro Velasquez-Contreras ("Petitioner") is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1. On April 13, 2026, Petitioner, through counsel, filed a Petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking release from custody.[1] Dkt. 1. The Petition has been fully briefed. Dkts. 1, 6, 9.

Having considered the parties' submissions, the balance of the record, and the governing law, the Court **ORDERS** that the habeas Petition (Dkt. 1) is **GRANTED IN PART**, and the

---

[1] The parties have consented to proceed in this matter before a United States Magistrate Judge. *See* Dkt. 6.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 1

Government **SHALL PROVIDE** Petitioner with a bond hearing before an Immigration Judge ("IJ") within **fourteen (14) days** of this Order.

## I.   BACKGROUND

Petitioner, a native and citizen of Mexico, entered the United States in October 2008 without inspection. Dkt. 1 ¶ 22; Dkt. 7 ¶ 3. He has lived and worked in the U.S. for seventeen (17) years and maintains strong ties to the country, including three (3) minor U.S. citizen children. Dkt. 1 ¶ 2. Petitioner asserts he has a pending application for Cancellation of Removal and Adjustment of Status for Certain Nonpermanent Residents (Form EOIR-42B). *Id*. Petitioner has no criminal history. Dkt. 1 ¶ 2; Dkt. 8-1 at 4, Ex. 1.

On December 1, 2025, during targeted immigration enforcement operations in Portland, Oregon, ICE officers encountered Petitioner at a vehicle stop in the area. Dkt. 7 ¶ 3. After questioning him, ICE officers determined that Petitioner was an alien present in the United States without being admitted or paroled. *Id*. On the same day, Petitioner was arrested and issued a Notice to Appear ("NTA"), and subsequently issued a superseding NTA on December 20, 2025. *Id*. ¶ 4; Dkt. 8-2, Ex. 2. The superseding NTA charged Petitioner with removability under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i), and placed him in removal proceedings. Dkt. 7 ¶ 4. Petitioner was transferred to NWIPC, where he remains detained.[2] *Id*.

---

[2] The record and accounts of both parties are unclear as to Petitioner's ICE custody leading up to December 20, 2025. According to Petitioner's Form I-213, Record of Deportable/Inadmissible Alien, dated December 1, 2025 (the date of Petitioner's arrest by ICE), Petitioner entered ICE custody on that day. *See* Dkt. 8-1 at 2, Ex. 2. The Deportation Officer who completed the Form I-213 also determined that Petitioner was not to be released, but instead held without bond and transferred to NWIPC for further action on his case. *Id*. at 4–5, Ex. 2. However, in a Declaration filed in support of the Response, Deportation Officer Ian Bloom references both the December 1, 2025, and December 20, 2025, dates for the NTAs, and adds only, "Petitioner was transported to NWIPC." Dkt. 7 ¶ 4. In his Petition, Petitioner's counsel asserts that Petitioner was stopped by ICE during a traffic stop not on December 1, 2025, but on December 20, 2025. Dkt. 1 ¶ 26. Counsel then states that Petitioner has remained in ICE custody "since

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 2

On January 29, 2026, Petitioner, as one of seven detainees at NWIPC collectively seeking enforcement of the District Court's declaratory relief as members of the Bond Denial Class from *Rodriguez Vazquez v. Bostock*, No. 3:25-cv-05240-TMC, 2025 WL 2782499 (W.D. Wash. Sept. 30, 2025), filed his first habeas petition. *Rivera Hernandez, et al. v. Hermosillo*, No. 2:26-cv-00341-TMC, Dkt. No. 1 (W.D. Wash.) (Cartwright, J.). Dkt. 7 ¶ 5.

On February 3, 2026, Petitioner, represented by counsel, appeared before an Immigration Judge ("IJ") for a bond redetermination hearing. Dkt. 7 ¶ 6; Dkt. 8-3, Ex. 3. IJ John Odell found he lacked jurisdiction to issue bond, and in the alternative, Petitioner was not entitled to bond because he presents a flight risk. Dkt. 7 ¶ 6; Dkt. 8-3, Ex. 3. Petitioner did not appeal his bond determination. Dkt. 7 ¶ 7.

On February 4, 2026, the Honorable Tiffany M. Cartwright denied Petitioner's first habeas petition on the basis of the IJ's finding of mandatory detention under Section 1225(b). *Rivera Hernandez*, No. 2:26-cv-00341-TMC, Dkt. No. 17 at 3–4.

On February 11, 2026, Petitioner was ordered removed to Mexico. Dkt. 7 ¶ 9; Dkt. 8-4, Ex. 4. On the same day, an IJ issued a separate order taking no action on a bond hearing based on the District Court's denial of Petitioner's habeas petition. Dkt. 7 ¶ 9; Dkt. 8-5, Ex. 5. Petitioner appealed the order of removal to the Board of Immigration Appeals ("BIA") on March 13, 2026. Dkt. 7 ¶ 10. That appeal remains pending. *Id.*

On April 13, 2026, Petitioner filed this second habeas Petition. Dkt. 1. Respondents filed a Return on April 28, 2026, and Petitioner filed his Traverse on May 4, 2026. Dkts. 6, 9.

//

that date and is currently detained at [NWIPC]." *Id.* ¶ 27. Upon review of these contradictory accounts, the Court will utilize the December 1, 2025, date of Petitioner's arrest by ICE as the initial date of Petitioner's ICE custody.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 3

## II.    LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and...the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). To obtain habeas relief, habeas petitioners have the burden of demonstrating there is no lawful basis for their detention by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## III.    DISCUSSION

**A.    Basis for Petitioner's Detention**

As an initial matter, Respondent argues that Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2), and thus "subject to mandatory detention while their full removal proceedings are pending." Dkt. 6 at 5. Because Petitioner has appealed his order of removal, his removal is not administratively final. *See* 8 C.F.R. § 1241.1.

In his Traverse, Petitioner seems to suggest that he is detained under Section 1226(a), but also asserts that the Court "need not resolve the statutory classification to grant relief." Dkt. 9 at 5. Rather, as stated in his Petition, "This case does not challenge removal proceedings, statutory detention authority, or discretionary arrest power. It challenges only the absence of constitutionally required procedural safeguards resulting from the Immigration Court's refusal to conduct a meaningful review." Dkt. 1 ¶ 36. And more specifically, Petitioner argues his continued detention is unlawful because he has been detained since December 2025 without the

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 4

Department of Homeland Security ("DHS") providing him with a constitutionally adequate custody determination. Dkt. 1 ¶¶ 36–38.

As the substance of Petitioner's claim is that his detention has become unconstitutionally prolonged, the Court will assume Petitioner is subject to Section 1225 without considering the merits of Respondents' argument. Further, as both parties have discussed the *Banda* test with respect to Petitioner's prolonged detention claim, the Court will likewise proceed under that framework.

**B.    The *Banda* Factors**

"Neither the Supreme Court nor the Ninth Circuit has settled on a test for assessing the constitutionality of prolonged mandatory detention" under Section 1225. *Toktosunov v. Wamsley*, No. 2:25-cv-1724-TL, 2025 WL 3492858, at *3 (W.D. Wash. Dec. 5, 2025). Courts in this district have adopted the "*Banda* test" to assess when such detention violates due process. *See, e.g.*, *Hong v. Mayorkas*, No. 2:20-cv-1784-LK, 2022 WL 1078627, at *5 (W.D. Wash. Apr. 11, 2022) (citing *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019)). Under *Banda*, a court evaluates the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Id.* (citing *Banda*, 385 F. Supp. 3d at 1106). The Court will consider each *Banda* factor in turn.

1.    Total Length of Detention

"[T]he most important factor" under the *Banda* test is the length of detention. 385 F. Supp. 3d at 1118. "The longer mandatory detention continues . . . the harder it is to justify." *Murillo-Chavez v. Garland*, No. 2:22-cv-0303-LK-MLP, 2022 WL 16555994, at *5 (W.D.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 5

Wash. Aug. 30, 2022) (citing cases), *report and recommendation adopted*, No. 2:22-CV-0303-LK, 2022 WL 16553176 (W.D. Wash. Oct. 31, 2022).

Here, when Petitioner first filed this Petition for habeas relief, he had been detained for just over four months. Dkt. 1 ¶¶ 26–27. As of the date of this Order, he has been detained for approximately six months. Respondent asserts that this length of detention "is well-below what Courts in this District typically find unreasonable." Dkt. 6 at 8. The Court disagrees.

Petitioner's detention has reached "the rough six-month threshold at which detentions become less and less reasonable." *L.B.O.M. v. Hermosillo*, No. 2:25-cv-2695-GJL, 2026 WL 266068, at *3 (W.D. Wash. Feb. 2, 2026) (quotations and citations omitted); *see Odimara v. Bostock*, No. 2:24-cv-0572-JHC, 2024 WL 3862256, at *6 (W.D. Wash. July 12, 2024) ("Petitioner was detained for four months at the time he filed his Petition, and his detention has now extended to approximately six months....[T]his first factor is neutral or, at most, weighs slightly in favor of [petitioner]."); *cf. Bojorge-Sequeira v. Geo Group Inc.*, No. 2:25-cv-1807-KKE, 2026 WL 288378, at *5 (W.D. Wash. Jan. 15, 2026), *report and recommendation adopted* 2026 WL 285657 (Feb. 3, 2026) (finding first *Banda* factor "weighs slightly in favor of Respondents" where Petitioner had been detained for "approximately five months.").

Therefore, the Court finds that this factor weighs slightly in favor of Petitioner.

2.      Likely Duration of Future Detention

With the second factor, courts must consider "how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings—including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 1119 (internal quotation marks omitted) (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 859

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 6

(D. Minn. 2019)). Due to the lengthy appeal process, this factor favors a petitioner when an appeal has been filed. *L.B.O.M.*, 2026 WL 266068, at *4 (collecting cases). For cases in earlier stages, courts have found this factor neutral. *Id.*

Petitioner has timely appealed his removal order to the BIA. Dkt. 7 ¶ 10. Given the length of time the appeals process can take, the Court finds that the second *Banda* factor favors Petitioner.

### 3.    Conditions of Detention

For the third factor, the Court must consider the conditions in which Petitioner is detained. The more that these conditions "resemble penal confinement, the stronger [Petitioner's] argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. 3d at 1119 (quoting *Jamal A.*, 358 F. Supp. 3d at 860). Petitioner is detained at NWIPC. Dkt. 1 ¶ 27. Courts in this District have routinely found that this factor favors petitioners detained at NWIPC. *See, e.g.*, *Rahmani v. Bondi*, No. 2:26-cv-0362-KKE, 2026 WL 638364, at *5 (W.D. Wash. Mar. 6, 2026); *Maliwat v. Scott*, No. 2:25-cv-0788-TMC, 2025 WL 2256711, at *6 (W.D. Wash. Aug. 7, 2025); *Toktosunov*, 2025 WL 3492858, at *5; *Joshi v. Wamsley*, No. 2:26-cv-0148-TLF, 2026 WL 456822, at *6 (W.D. Wash. Feb. 18, 2026); *Chekhovskii v. Scott*, No. 2:25-cv-2550-TLF, 2026 WL 353265, at *5 (W.D. Wash. Feb. 9, 2026); *L.B.O.M.*, 2026 WL 266068, at *5.

Accordingly, the third factor favors Petitioner.

### 4.    Delays in Removal Proceedings

"The fourth and fifth *Banda* factors consider whether there have been delays in the removal proceedings caused by Petitioner or Respondents, respectively." *Rahmani*, 2026 WL 638364, at *5 (citing *Banda*, 385 F. Supp. 3d at 1118). Courts should be "sensitive" to the possibility that petitioners may seek delay to "put off the final day of deportation," or "compel a

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 7

determination" that they "must be released because of the length of [their] incarceration." *Id.* (quoting *Banda*, 385 F. Supp. 3d at 1119). Courts must also recognize that it is not unreasonable for petitioners to "raise legitimate defenses to removal." *Id.* (quoting *Martinez v. Clark*, No. 2:18-cv-1669-RAJ-MAT, 2019 WL 5968089, at *10 (W.D. Wash. May 23, 2019), *report and recommendation adopted* 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019)). Lastly, continued detention becomes more unreasonable if delay is caused by the government. *Id.*

Nothing from the parties' briefing indicates that either has caused any unreasonable delay. Dkt. 6 at 9; Dkt. 9 at 6–7. Accordingly, the Court finds that both the fourth and fifth factors are neutral.

### 5. Likelihood of a Final Order of Removal

Under the sixth *Banda* factor, the Court considers the likelihood that Petitioner's removal proceedings will result in a final removal order. 385 F. Supp. 3d at 1118. "Where a noncitizen has not asserted any grounds for relief from removal, presumably the noncitizen will be removed from the United States, and continued detention will at least marginally serve the purpose of detention, namely assuring the noncitizen is removed as ordered." *Id.* at 1120. However, "where a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'" *Id.* (quoting *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018)).

The Court lacks adequate information to "opine on the potential merits" of Petitioner's claims and defenses and "finds this sixth factor to be neutral." *Joshi*, 2026 WL 456822, at *7.

### 6. Weighing the Factors

Factors one, two, and three weigh in favor of Petitioner. Factors four, five, and six are neutral. Since three of the factors favor Petitioner and none favors Respondents, the Court

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 8

concludes that the *Banda* test, on balance, favors Petitioner, and that his "continued mandatory detention under § 1225(b) has become unreasonable and that due process requires the Government to provide him with a bond hearing." *Banda*, 385 F. Supp. 3d at 1120. *See also Mohamed v. ICE Field Office Director*, No. 2:26-cv-0181-TL, 2026 WL 497096, at *6 (Feb. 23, 2026) (finding petitioner's detention had become unconstitutionally prolonged with three factors favoring petitioner, one factor favoring respondents, and two factors neutral); *Maliwat*, 2025 WL 2256711, at *9 (finding petitioner entitled to bond hearing when two factors favor petitioner, four factors are neutral, and no factor favors respondents).

**C.    Appropriate Relief – Bond Hearing**

Having found that Petitioner's continued detention has become unreasonable, the Court must now consider the appropriate relief. Petitioner seeks immediate release from custody or, in the alternative, an individualized bond hearing before an Immigration Judge. Dkt. 1 at 12.

The remedy for prolonged detention in this procedural posture is a bond hearing, not release. *L.B.O.M.*, 2026 WL 266068, at *6 (citing *Hong*, 2022 WL 1078627, at *7). The bond hearing must be held within 14 days of this Order and must comport with the requirements of *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011) (clarifying that "the government should be held to a clear and convincing evidence standard of proof" in a bond hearing).[3]

**D.    Petitioner's Request for Conditions of Release**

In addition to immediate release or, in the alternative, an individualized bond hearing, Petitioner requests an order enjoining Respondents from "placing GPS ankle monitors on [him] upon his release, absent clear and convincing evidence that [he] is a flight risk or danger a danger

---

[3] As the Court has found Petitioner is entitled to a bond hearing, it will not address Respondents' additional arguments in favor of denying such relief. *See* Dkt. 6 at 10–13.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 9

to the community and that no other alternatives would mitigate those risks[.]" Dkt. 1 at 13. Respondents oppose this request, arguing that because of the IJ's alternative flight risk finding, "the placement of GPS ankle monitors on Petitioner upon release would not be arbitrary." Dkt. 6 at 14.

Where, as here, habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has "the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them," "irrespective of the accompanying habeas petition." *Roman v. Wolff*, 977 F.3d 935, 941–42 (9th Cir. 2020). Importantly, though, "[i]n seeking a permanent injunction, the moving party must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).

Nowhere in this Petition does Petitioner allege that Respondents will place GPS monitoring devices on him without justification. Without argument or evidence that this outcome is likely to occur, Petitioner's request constitutes nothing more than a "mere possibility" of harm that does not entitle him to relief. For these reasons, the Court **DENIES** Petitioner's request for injunctive relief regarding a GPS ankle monitor if he is released.

### IV.   CONCLUSION

Based on the foregoing, the Court **ORDERS** the following:

(1)   Petitioner Ramiro Velasquez-Contreras' Petition for writ of habeas corpus (Dkt. 1) is **GRANTED in part**;

(2)   Within **fourteen (14) calendar days** of the date of this Order, the Government **SHALL** provide Petitioner an individualized bond hearing that complies with the requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011)—there must be a

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 10

contemporaneous record of the hearing, and the Government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community;

(3)     Alternatively, or if the bond hearing does not occur within **fourteen (14) calendar days** of this Order, Respondents **SHALL** immediately release Petitioner under appropriate conditions of release; and

(4)     Respondents **MUST** file a status report with the Court not later than **fifteen (15) calendar days** from this Order. The status report **MUST** detail if and when the bond hearing occurred, if the bond was granted or denied and, if denied, the reasons for that denial.

Dated this 1st day of June, 2026.

_____
Grady J. Leupold
United States Magistrate Judge

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 11